DECISION
{¶ 1} Relator, The Medical College of Ohio at Toledo, filed an original action in this court seeking the issuance of a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order wherein the commission refused to exercise its continuing jurisdiction by refusing to order respondent, Diane Czerniak ("claimant"), to undergo a new medical evaluation for purposes of determining whether claimant should be entitled to receive permanent total disability ("PTD") compensation.
 {¶ 2} The matter was referred to a magistrate of this court pursuant to Civ.R. 53(C), and Section (M), Loc.R. 12 of the Tenth District Court of Appeals. The magistrate issued a decision containing findings of fact and conclusions of law with the recommendation that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.)
 {¶ 3} No objections have been filed to the magistrate's decision.
 {¶ 4} As there have been no objections filed to the magistrate's decision and as it contains no error of law or other defect on its face, and based on an independent review of the file, this court adopts the magistrate's decision. Relator's request for a writ of mandamus is denied.
Writ of mandamus denied.
PETREE, P.J., and BOWMAN, J., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 IN MANDAMUS {¶ 5} Relator, The Medical College of Ohio at Toledo, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order wherein the commission refused the exercise its continuing jurisdiction by refusing to order respondent Diane Czerniak ("claimant") to undergo a new medical evaluation for purposes of determining whether claimant should still be entitled to receive permanent total disability ("PTD") compensa-tion.
Findings of Fact:
 {¶ 6} 1. Claimant sustained a work-related injury and her claim has been allowed for: "substantial aggravation of pre-existing asthmatic bronchitis; aggravation of pre-existing personality disorder."
 {¶ 7} 2. On December 3, 1991, claimant filed an application for PTD compensa-tion.
 {¶ 8} 3. Claimant's application was heard before a staff hearing officer ("SHO") on March 15, 1994, and resulted in an order granting the application for PTD compensa-tion.
 {¶ 9} 4. On December 20, 2001, the Ohio Bureau of Workers' Compensation ("BWC") filed motions asking the commission to exercise its continuing jurisdiction under R.C. 4123.52 to order claimant to submit to a new medical examination and asking the commission to terminate claimant's PTD compensation due to new and changed circumstances. The BWC's motion was based upon the fact that the BWC alleged that claimant currently had approximately 40 cats living with her in her home. After completing its own investigation, the BWC requested that claimant submit to a medical examination and claimant refused. The BWC requested that Dr. Lawrence Martin review claimant's medical records from 1995 through 2000, as well as the evidence gathered by the BWC through its investigation. Dr. Martin concluded that, based upon the evidence the BWC presented through its investigation, claimant's medical status appeared to be much improved from what her physicians described in the early 1990s. Dr. Martin opined that asthma is a variable condition and, that based upon the new evidence, claimant should be reevaluated by a pulmonologist to determine whether she remains permanently and totally disabled.
 {¶ 10} 5. The matter was heard before an SHO on February 27, 2002, and resulted in an order denying the BWC's motion to have claimant reevaluated and to terminate PTD compensation. The SHO reviewed all the evidence presented by the BWC and then reviewed the evidence which was in the record in 1994 when PTD compensation was granted. The SHO specifically noted as follows:
 {¶ 11} "An analysis of all of the evidence in file reveals that the issue of `cats' was first noted by Dr. Winder, attending physician, in a treatment record dated May 13, 1986. The record states that `patient also has cats — no clinical trigger although boyfriend's dog does'. On October 30, 1988, Dr. Winder forwarded a consultation report to Dr. Young outlining the results of allergy testing. The test results revealed moderate reactivity to cats."
 {¶ 12} The SHO then noted that claimant's first episode of bronchospasm which is induced by cigarette smoke and cold air occurred after she had pneumonia in 1986. Since then, her airways have become sensitized and responsive to different stimuli, including cigarette smoke. This was based upon the March 3, 1989 report of Dr. Kahn. The SHO further noted that claimant's attending pulmonologist Dr. Frank O. Horton first mentioned cats in his treatment records dated May 12, 1994. An allergy test was ordered and the results were negative for cat allergy.
 {¶ 13} The SHO then reviewed the more recent treatment records and consultation reports from Dr. Horton and noted that those records indicate that claimant's condition has worsened. The SHO ultimately concluded as follows:
 {¶ 14} "This Staff Hearing Officer finds that the 1986 and 1988 records from Dr. Winder reveal the existence of the injured worker's contact with cats. These records presumably should have been in file in the normal course of business prior to the Staff Hearing Officer hearing on permanent total disability in 1994. Further, and significant, the allergy testing in 1994 revealed that the claimant was NOT allergic to cats. There is no discussion medically from Dr. Martin how the injured worker's `medical status seems much improved'. He cites nothing in the medical records for this conclusion. The mere fact that the injured worker who is not allergic to cats per the 1994 test, keeps cats as pets in her home is not probative on this issue. Contrary to Dr. Martin's summary conclusion, the treatment records of Dr. Horton reveal the injured worker's condition to be severe. Not since the negative allergy test in 1994, is the issue of cats mentioned in Dr. Horton's records.
 {¶ 15} "The Administrator and the employer contend that the number and amount of cats were not known and are new and changed circumstances. This may be true. Nowhere in the records could this Staff Hearing Officer find mention of the unusually large number of cats the injured worker keeps as pets. However, at the time of the permanent total disability hearing in 1994, the injured worker was living with her parents in an alleged environmentally controlled house. Since 1994, the injured worker obviously has moved into her own home and acquired a significant amount of cats as pets. This life-style change of the injured worker, however, is not in and of itself `new or changed' circumstances. It does not in and of itself reveal her condition is `much improved'. Once again, there is a glaring lack of medical analysis to support the contention that the injured worker's pulmonary condition is much improved because she keeps numerous cats as pets.
 {¶ 16} "This Staff Hearing Officer finds the contention of the Administrator and the employer unpersuasive. The issue of `cats' either was or should have been argued at the permanent total disability hearing in 1994. Obviously, said argument was not persuasive. Even more important, the injured worker was found NOT to be allergic to cats by testing in 1994. Further, the issue of `smoke' was noted in the 1989 report of Dr. Khan [sic]. The injured worker was sensitized to the extent that even smoke from a patient caused her problems. Presumably, this issue either was argued or should have been argued at the permanent total disability hearing in 1994. As such, it is not persuasive that the fact that the instant employer hospital is `smoke free' constitutes new or changed circumstances.
 {¶ 17} "The Administrator has not established by a preponderance that there are `new and changed circumstances' sufficient to order a new medical examination on the issue of permanent and total disability. Therefore, it is the order of this Staff Hearing Officer to DENY the Administrator's request, accordingly." (Emphasis sic.)
 {¶ 18} 6. Relator's request for reconsideration was denied by order of the commission mailed June 8, 2002.
 {¶ 19} 7. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 20} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 21} Relator contends that the commission abused its discretion by finding that relator did not present sufficient evidence of new and changed circumstances to warrant the commission's exercise of its continuing jurisdiction pursuant to R.C. 4123.52. In support, relator argues that the 1994 order granting PTD compensation did not mention cats and that, at that time, there was only one report in the record indicating that claimant had cats. Also, relator claims that living with one cat is different than living with numerous cats and that whether or not claimant is allergic to cats, the evidence of her living with so many cats constitutes grounds for the commission to exercise its continuing jurisdiction. Relator also argues that it has not put a no smoking policy into effect at the workplace and that this constitutes new and changed circumstances. For the reasons that follow, this magistrate disagrees.
 {¶ 22} Continuing jurisdiction is vested in the commission by R.C. 4123.52, which provides, in part, that:
 {¶ 23} "The jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified. * * *"
 {¶ 24} In State ex rel. B C Machine Co. v. Indus. Comm.65 Ohio St.3d 538, 541-542, the Ohio Supreme Court examined the judicially-carved circumstances under which continuing jurisdiction may be exercised, and stated as follows:
 {¶ 25} "R.C. 4123.52 contains a broad grant of authority. However, we are aware that the commission's continuing jurisdiction is not unlimited. See, e.g., State ex rel. Gatlin v. Yellow Freight System, Inc. (1985), 18 Ohio St.3d 246 * * * (commission has inherent power to reconsider its order for a reasonable period of time absent statutory or administrative restrictions); State ex rel. Cuyahoga Hts. Bd. of Edn. v. Johnston (1979), 58 Ohio St.2d 132 * * * (just cause for modification of a prior order includes new and changed conditions); State ex rel. Weimer v. Indus. Comm. (1980), 62 Ohio St.2d 159 * * * (continuing jurisdiction exists when prior order is clearly a mistake of fact); State ex rel. Kilgore v. Indus. Comm. (1930), 123 Ohio St. 164 * * * (commission has continuing jurisdiction in cases involving fraud); State ex rel. Manns v. Indus. Comm. (1988), 39 Ohio St.3d 188 * * * (an error by an inferior tribunal is a sufficient reason to invoke continuing jurisdiction); and State ex rel. Saunders v. Metal Container Corp. (1990), 52 Ohio St.3d 85,86 * * * (mistake must be `sufficient to invoke the continuing jurisdiction provisions of R.C. 4123.52'). Today, we expand the list set forth above and hold that the Industrial Commission has the authority pursuant to R.C. 4123.52 to modify a prior order that is clearly a mistake of law. In so holding, we note that the court of appeals ably recognized that: '* * * [W]here it is clear that this court would issue a writ of mandamus ordering the Industrial Commission to vacate, modify or change a decision or order, the respondent Industrial Commission neither exceeds its authority or jurisdiction nor acts unlawfully nor abuses its discretion if it proceeds to make such correction that this court would clearly have ordered without awaiting either an action being filed in this court or a decision from this court if one be filed.' "
 {¶ 26} In State ex rel. Smothers v. Mihm (1994), 69 Ohio St.3d 566,567-568, the Ohio Supreme Court considered the conditions under which the commission has jurisdiction to order a claimant to submit to a medical examination after the claimant has been found to be permanently and totally disabled. The court noted that, while the lifetime nature of the award negates the need for continuing medical proof on claimant's behalf, the award is not completely immune from later review. The court specifically stated that:
 {¶ 27} "* * * If, for example, the commission learns that the claimant is working or engaging in activity inconsistent with his permanent total disability status, the commission can use its continuing jurisdiction under R.C. 4123.52 to reopen the matter. Similarly, if new medical technology reversed a claimant's allowed condition, reconsideration of his or her award may be appropriate.
 {¶ 28} "What is common to these examples is the emergence of a new circumstance — a change since the initial award that merits reexamination of the earlier decision. * * *"
 {¶ 29} While R.C. 4123.53 does empower the commission to order a medical examination at any time, that provision cannot be applied until it is shown that these are new and changed circumstances which warrant the reopening of the issue.
 {¶ 30} In the present case, the commission has issued an order specifically citing the evidence upon which the commission relied and gave an explanation for the conclusion reached. Relator does not challenge the evidence upon which the commis-sion relied. Instead, relator contends that the mere number of cats with which claimant now lives and the fact that relator now has a no smoking in effect mandates that the commission exercise its continuing jurisdiction, order claimant to submit to an additional medical examination and thereafter terminate her PTD compensation.
 {¶ 31} Although relator did present evidence that claimant is living with significantly more cats now than she lived with back in 1994, the SHO is correct in stating that there was evidence in the record when PTD compensation was granted in 1994 to indicate that claimant did live with at least one cat. Further, the commission is correct in noting that the allergy test which claimant took indicates she is not allergic to cats. The SHO noted the evidence and concluded that it was not sufficient to establish new and changed circumstances. This magistrate agrees. Furthermore, the SHO noted that claimant had indicated that she had problems from a respiratory standpoint dealing with patients who smoke. Obviously, claimant's sensitivity to cigarette smoke was not limited solely to the fact that employees smoked at the workplace. Instead, as noted by the SHO, claimant had problems dealing with patients who had the odor of cigarette smoke about them.
 {¶ 32} Relator makes two further arguments. First, relator contends that the commission purposefully maintained continuing jurisdiction of this issue because, in its March 15, 1994 order, the commission stated as follows: "Permanent and total disability compensation is hereby awarded from November 21, 1991 * * * and to continue without suspension unless future facts or circumstances should warrant the stopping of the award."
 {¶ 33} Contrary to relator's contention, this magistrate concludes that the above-cited language did not vest the commission with any more authority to exercise its continuing jurisdiction than is provided by R.C. 4123.52 and the cited case law.
 {¶ 34} Second, relator contends that, in its March 15, 1994 order, the commission specifically determined that relator was restricted to sedentary work in an environment where she is subjected to no respiratory irritants of any kind. When the commission's order is reviewed, it becomes apparent that relator was not citing the commission in context. In its March 15, 1994 order, the commission stated as follows:
 {¶ 35} "Dr. Baldoni's combined effects opinion is that claimant is restricted to very sedentary work in a very sheltered workplace environment where she is subjected to no respiratory irritants of any kind. Such an environment can only exist in an atmosphercially [sic] controlled isolation apparatus, which is held not to be a realistic employment milieu [sic]. More particularly Doctors Bill [sic], Rowe, Horton and Ali all agree claimant is permanent and totally disabled."
 {¶ 36} As such, the commission did not conclude that claimant was realistically restricted to any such environment.
 {¶ 37} The commission cited the evidence upon which it relied and provided a reasonable explanation for its decision. Although relator did present new evidence for the commission to consider, ultimately the commission determined that it was not sufficient to establish new and changed circumstances and denied relator's request. This magistrate does not find that the commission abused its discretion.
 {¶ 38} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying its motion to exercise its continuing jurisdiction, to order claimant to submit to a new medical examination, and to terminate claimant's PTD compensation. As such, this court should deny relator's request for a writ of mandamus.